E-FILED
Tuesday, 24 November, 2009  04:53:06 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| KEVIN BOYER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  08-3301 |
| | ) | |
| MICHAEL ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

Plaintiff Kevin Boyer appeals from a denial of his application for Social Security Disability Benefits and Supplemental Security Income (collectively Disability Benefits).  42 U.S.C. §§ 405(g) and 1383(c)(3). Both parties have filed cross motions for summary judgment.  For the reasons set forth below, the Commissioner's Motion for Summary Affirmance (d/e 15) is ALLOWED, and Plaintiff Kevin Boyer's Motion for Summary Judgment (d/e 12) is DENIED.

## STATEMENT OF FACTS

Boyer was born on April 18, 1964.  He achieved a ninth grade

education.  He previously worked as a fork lift operator, garbage collector, fabrication operator, and mental health technician.  Boyer initially alleged that he became disabled on September 1, 2004.  He subsequently amended his application to allege that he became disabled on February 16, 2005. Boyer suffered from asthma, COPD, degenerative joint and degenerative disc disease, and depression.  He also smoked and had a history of drug use, including marijuana, cocaine, and methamphetamine.

In November 2004, Boyer sought mental health counseling.  At that time, he reported smoking marijuana daily and drinking once every three to four months.  Answer to Complaint (d/e 10), attached Certified Record before the Social Security Administration (R.), at 444.  Boyer reported previously using cocaine and methamphetamine, and going into inpatient treatment in 1994.  Boyer complained that his depression made him avoid people.  He reported that he lost his job because of his depression.  R. 446. Boyer's counselor, Valerie Scarbrough, M.S.W., diagnosed major depression with alcohol dependance.  She assigned a Global Assessment of Functioning (GAF) score of 50. R. 448.

On January 21, 2005, Boyer started seeing psychiatrist Raymond Bland, M.D.  Boyer reported smoking marijuana and drinking six to seven

beers during the previous week.  He reported a history of cocaine use and smoking one pack of cigarettes a day.  Dr. Bland noted good eye contact, and normal speech.  Dr. Bland found that Boyer had major depression with mild lability, logical and goal directed thoughts, no abnormal thought content, full orientation and intact cognition, but significant stressors because Boyer was unemployed and did not have a place to live.  Dr. Bland diagnosed major depression with alcohol dependance and a history of cocaine dependance.  Dr. Bland assigned a GAF score of 45 to 50.  Dr. Bland prescribed Zoloft and told Boyer to abstain from other substances. Dr. Bland noted that he did not believe that Boyer would abstain.  R. 437-38.

On March 30, 2005, Boyer had acute asthmatic bronchitis.  R. 416-17.  On April 1, 2005, Boyer saw Dr. Bland again.  Boyer reported that he stopped taking the Zoloft because the medicine upset his stomach.  Boyer complained of a recent respiratory infection.  He reported that he had been on antibiotics.  He looked fatigued and had poor concentration.  Dr. Bland assigned a GAF of 45.  Dr. Bland prescribed Cymbalta.  R. 436.

On June 28, 2005, state agency physician Frank Jimenez, M.D., reviewed Boyer's medical records.  Dr. Jimenez opined that Boyer's asthma

attacked were infrequent and were not severe.  Dr. Jimenez opined that Boyer had no physical limitations other than a need to avoid concentrated exposure to fumes, dust, and gases.  R. 467-73.

Also in June 2005, state agency evaluator Lionel Hudspeth reviewed Boyer's medical records and opined that Boyer met the Listing 12.09 for substance addiction.  The Listings are a set of carefully defined conditions that cause a person to be disabled without regard to age, education, or work experience.  20 C.F.R. Part 404 Subpart P, Appendix 1.  Hudspeth found that Boyer had marked limitations on: (1) daily living, (2) maintaining social functioning, and (3) maintaining concentration, persistence, or pace.  He also found that Boyer had one or two episodes of decompensation.  R. 485.  Hudspeth opined, "Claimant has severe limitations of his daily activities and mental status but the condition is exacerbated by both alcohol and cocaine abuse."  R. 487.  The state agency denied his request for disability benefits because he could perform routine tasks if not for his drug and alcohol use.  R. 745.

On July 12, 2005, Boyer saw a counselor and reported that his depressive symptoms were not improving.  Boyer reported that he was out of his prescription medicine Lexipro.  On July 20, 2005, Boyer went to the

emergency room with pneumonia and rib cage strain from coughing. Boyer reported smoking a pack of cigarettes a week. On August 5, 2005, Dr. Bland saw Boyer. Dr. Bland noted fatigue and a restricted affect. Dr. Bland continued Boyer's medication. Dr. Bland diagnosed major depression, early remission of alcohol dependance, and a history of cocaine dependence. Dr. Bland assigned a GAF of 45. R. 464.

On August 24, 2005, state agency physician Reynaldo Gotanco, M.D., reviewed the medical records and affirmed the opinion of Dr. Jimenez. R. 474. State agency evaluator Erika Altman reviewed the medical records and affirmed the opinions of Lionel Hudspeth. On reconsideration, the state agency again denied Boyer's application because he could perform routine activities if not for his drug and alcohol use. R. 740.

On September 15, 2005, Boyer saw David C. Crabtree, M.D., for his asthma. Boyer previously saw Dr. Crabtree in 1992 and 1998. Boyer reported that he was not smoking or drinking alcohol. Dr. Crabtree stated that spirometry showed severe airway restrictions with minimal post bronchodilator response. Dr. Crabtree prescribed medication, including a nebulizer. R. 522. Pulmonary testing on October 25, 2005, showed mild obstruction before medication and normal spirometry after medication. R.

552-53.  On January 26, 2006, Dr. Crabtree found that Boyer's breathing was still bad and that Boyer was wheezing all the time.  Dr. Crabtree stated that Boyer was having quite a tough problem with asthma, but noted that he had good control with nebulizers.  R. 565.

On April 7, 2006, Dr. Crabtree found Boyer's "breathing very bad – slowly worse.  Chest sounds tight as a drum."  R. 564.  On April 11, 2006, Dr. Crabtree admitted Boyer to the hospital with severe asthma symptoms and chest pain.  Boyer denied smoking to Dr. Crabtree.  Later the same day, Boyer stated that he was smoking four to five cigarettes a day and using a Nicoderm patch.  He stated that he was down from one to two packs per day.  R. 515.  Pulmonary function testing showed moderately severe obstructive pulmonary disease.  R. 512.  Boyer's breathing improved while in the hospital.  He was released on April 14, 2006.  Dr. Crabtree stated that his breathing improved because he was not smoking.  R. 510.  A cardiovascular consultant, Vincent Zuck, M.D., told Boyer to stop smoking. R. 509.

On May 2, 2006, Dr. Zuck performed a diagnostic heart catheterization.  He found diffuse coronary artery disease that was not severe.  Dr. Zuck opined that Boyer's chest pains were non-cardiac.  He

recommended that Boyer stop smoking.  R. 504-06.

On May 15, 2006, Boyer saw Romaisa Firdose, M.D., due to back pain.  Boyer had a history of lower back pain and epidural injections.  Boyer denied any recreational drug use and reported no drinking for at least three years.  Boyer went to see Dr. Firdose because he was out of Vicodin.  Dr. Firdose prescribed Vicodin and Tramadol.  R. 543-44.

On May 30, 2006, Dr. Crabtree set forth some opinions regarding Boyer's condition.   Dr. Crabtree opined on one form that Boyer's pulmonary disease markedly restricted his ordinary physical activity, but he also opined that Boyer was comfortable at rest.  R. 494-95.  Dr. Crabtree opined that Boyer was limited to less than sedentary sustained work involving no lifting, sitting six hours per day, standing up to two hours per day and walking up to two hours per day.  Dr. Crabtree opined that Boyer had mild restrictions on being near moving machinery and driving, moderate restrictions on being around unprotected heights and total restrictions on being exposed to marked changes in temperature and humidity and dust, fumes, and gases.  R. 497.

On August 22, 2006, Boyer saw Dr. Zuck again.  Boyer told Dr. Zuck that he was still smoking five cigarettes per day.   Dr. Zuck found that

Boyer's hypertension was under excellent control and that his coronary artery disease was well controlled.  He stated that Boyer's main problems were pulmonary rather than cardiac.  R. 498-502.

On December 4, 2006, Boyer saw Dr. Crabtree again.  Boyer was suffering from coughing, wheezing and congestion.  Dr. Crabtree recorded that Boyer was still smoking.  Dr. Crabtree changed Boyer's medication.  R. 560.  On December 15, 2006, Boyer saw a mental health counselor.  Boyer complained of having crying spells and difficulty sleeping.  Boyer stated to his mental health counselor that he was still smoking cigarettes and marijuana, but denied drinking alcohol or using cocaine in two years.  R. 579.

On April 6, 2007, Boyer went to see Dr. Bland again.  Boyer told Dr. Bland that he had been feeling well until a recent upper respiratory infection.  Boyer also told Dr. Bland that he had stress at home because his girlfriend lost her job.  Dr. Bland stated that Boyer's affect was mildly restricted, but his mental state was otherwise normal.  Dr. Bland assessed Boyer with mild to moderate dysthymia, major depression, recurrent, remission to partial remission, and alcohol dependence in full sustained remission.  R. 616.

On May 6, 2007, Boyer was admitted to the hospital with shortness of breath secondary to asthma exacerbation or infectious pneumonia. Boyer reported smoking a pack of cigarettes a day, and no resolution of his shortness of breath with nebulizing treatments or antibiotics. Boyer underwent more aggressive treatments. Boyer improved and was sent home on May 14, 2007. R. 590-92. He was sent home with oxygen, smoking cessation materials, asthma medication, outpatient rehabilitation home exercises, and home nebulizers. R. 582.

In June 2007, Dr. Crabtree, Dr. Bland and Boyer's mental health counselor Ms. Sherren provided written opinions to Boyer. Dr. Crabtree opined that Boyer met Listing 3.03 for severe chronic bronchitis, COPD, and asthma, and was limited to less than sedentary work. Dr. Crabtree stated that "Kevin has severe chronic bronchitis, COPD, and asthma on maximal therapy but still is severely limited and unable to do any activity." R. 597. Dr. Bland and Sherren opined that Boyer met Listing 12.02 for organic mental disorder and Listing 12.04 for affective disorder with marked and repeated extended episodes of decompensation. R. 599-602. Dr. Bland opined that Boyer had marked limitations on activities of daily living and maintaining concentration, persistence or pace; moderate limitations on

maintaining social functioning; and one or two episodes of decompensation. R. 601. Dr. Bland opined that Boyer had "[c]linically diagnosed Dep. Disorder Recur & Dysthymia." R. 606.

On June 8, 2007, Boyer reported to Dr. Bland that his child and grandchild were bright spots. Dr. Bland diagnosed Boyer with dysthymia, mild to moderate, depression recurrent-remission, alcohol dependence in full remission, and history of cocaine dependence. R. 615.

On August 6, 2007, Dr. Bland developed a treatment plan for Boyer. Dr. Bland diagnosed Boyer with moderate depression in remission, alcohol dependence in full sustained remission, and history of cocaine dependence. Dr. Bland assigned a GAF of 47. R. 617. Dr. Boyer noted that Boyer was a good father who had joint custody of his daughter. The plan stated that Boyer was able to do housework. Dr. Bland saw Boyer on August 10, 2007. Dr. Bland noted at that time Boyer was doing better and the mental status examination had no abnormalities. R. 613.

On September 12, 2007, Boyer stated to his mental health counselor that he was feeling depressed. He told the counselor that his girlfriend was still in jail and he was questioning his relationship with her and the effect on their three year old daughter. R. 730. On October 17, 2007, Boyer told

10

the counselor that his mood was low and that he was suffering from crying spells and decreased motivation. He stated that his girlfriend was out of jail, but could not live with him and their daughter because the girlfriend was now a felon and the apartment building did not allow felons. Boyer stated he was doing a better job of raising their daughter when his girlfriend was in jail. R. 728.

On November 9, 2007, Boyer told Dr. Bland that his girlfriend had again been arrested, and Boyer had doubled his dose of Xanax. Dr. Bland diagnosed Boyer with dysthymia, mild to moderate, major depression, recurrent, in remission, alcohol dependence, and cocaine dependence, early full sustained remission. R. 727. On November 27, 2007, Boyer told his counselor that his girlfriend had been arrested for computer fraud, and he was smoking more and eating less. He had lost 14 pounds. He was happy about the weight loss. R. 726. On December 18, 2007, Boyer reported that his girlfriend was working, spending time at her grandfather's residence, and was not around much. The girlfriend, however, helped buy Christmas presents for their daughter. R. 725.

The Administrative Law Judge (ALJ) conducted the hearing on April 30, 2008. Boyer appeared in person and with his attorney. A vocational

expert, Dr. James Lanier, was also present.  Boyer and Dr. Lanier testified at the hearing.  Boyer testified that he was 44 years old at the time of the hearing.  He was five feet ten inches tall and weighed 285 pounds.  He lived in an apartment with his three year old daughter.  His 24 year old daughter lived across the street.  Boyer's older daughter and his girlfriend supported him.  He testified that he last worked in 2005 as a truck loader at a factory.  He worked that job for four or five years.  He said that he stopped working because of his depression.  He testified that he also worked as a mental health technician.  He took care of mentally ill patients.  He quit because of the stress in the job.

Boyer testified that he could not work because of his depression.  He said that he could not be around people and could not go out much.  He said that he had a lot of crying spells.  R. 771-2.  He said that he spent all day in bed three to four times a month.  R. 791.  He testified that he had regular panic and anxiety attacks two to three times a week.  R. 791.  He also testified that he had mood swings and was agitated easily.  R. 792.

He also testified that he had asthma and COPD and was on oxygen and, "all kinds of medication."  R. 773.  Boyer said that the medicine for his depression made him drowsy.

Boyer testified that he did not drink.  He said that he had not drunk alcoholic beverages for over five years.  He also testified that he did not use street drugs.  He said that he had not used any street drugs since 2002 or 2003.  He said that he had not used cocaine for seven or eight years.  R. 774-75.  He said that he quit smoking a year earlier.  R. 779.

Boyer stated that he spent his days at home usually.  He bathed himself.  On good days he would go across the street and have a cup of coffee in the morning with his older daughter.  He said that he took care of his three year old daughter with the help of his girlfriend and his older daughter.  He said that his girlfriend did the housework.  Boyer said that he prepared meals, did laundry and washed dishes.  He had trouble standing for a long time while washing dishes due to his back problems.  R. 786.  He did not shop for groceries.  He did not have a drivers license.  He lost his license 15 years earlier due to DUI convictions.  He watched television, especially football games.  He said that he napped one to two hours a day.

Boyer stated that he had trouble breathing during hot, humid and cold weather.  He had an oxygen machine at home that he used during these times.  He has difficulty climbing stairs because of his inability to breathe.

Dr. Lanier then testified.  The ALJ asked Dr. Lanier:

I would like you to consider an individual who's between 40 and 44 years old, ninth grade education. Past relevant work as described. An individual who is able to perform light and sedentary work with the following exceptions: no jobs which would require climbing of ladders, ropes or scaffolds. No over shoulder work. No jobs which would require working in a concentrated exposure to respiratory [INAUDIBLE], including extremes of cold, heat, wetness and humidity. And would be limited to jobs which were routine and repetitive in nature. How would these restrictions affect the performance of the past relevant work?

R. 797-98. Dr. Lanier responded, "He would not be able to do any of his past work." R. 798. Dr. Lanier, however, opined that such a person could work several jobs in the national economy at the sedentary and light level, including: surveillance system monitor; polisher, eyeglass frames; hand presser; and welder machine feeder. R. 798.

On cross examination, Dr. Lanier opined that the person described in the ALJ's question could not work if he had to take three to four unscheduled breaks per day or if the person missed three to four days of work per month. R. 799.

The ALJ issued her decision on May 29, 2008. The ALJ followed the five-step analysis set forth in the Social Security Administration regulations (Analysis). 20 C.F.R. §§ 404.1520, 416.920. Step 1 requires that the claimant not be currently engaged in gainful activity. 20 C.F.R. §§

404.1520(b), 416.920(b).  If true, Step 2 requires the claimant to have a severe impairment.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If true, Step 3 requires a determination of whether the claimant is so severely impaired that he is disabled regardless of his age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Such severe impairments are set forth in the Listings.  20 C.F.R. Part 404 Subpart P, Appendix 1.  The claimant's condition must meet the criteria in a Listing or be equal to the criteria in a Listing.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not so severely impaired, then Step 4 requires the ALJ to determine whether the claimant is able to return to his prior work considering his Residual Functional Capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant cannot return to his prior work, then Step 5 requires a determination of whether the claimant is disabled considering his RFC, age, education, and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The claimant has the burden of presenting evidence and proving the issues on the first four steps.  The Commissioner has the burden on the last step; the Commissioner must show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy.  Knight v. Chater, 55 F.3d

309, 313 (7th Cir. 1995).

The ALJ determined that Boyer met his burden at Steps 1 and 2. He was not engaged in substantial gainful activity and he had severe impairments due to his obesity, COPD, asthma, degenerative joint and disc disease, coronary artery disease, depression, anxiety, and past substance abuse. R. 223.

The ALJ determined that Boyer's impairments were not severe enough to meet the requirements of any Listing. The ALJ rejected the statements by his treating physicians, Drs. Crabtree and Bland, that Boyer met Listings because those opinions were not supported by medical evidence in the record. The ALJ rejected the opinion by the agency evaluators, Hudspeth and Altman, that Boyer met Listing 12.09 for substance abuse because the evidence in the record did not support the opinion. The ALJ also found that Boyer's testimony about the severity of his condition was not credible.

At Step 4, the ALJ determined that Boyer had the RFC to perform light and sedentary work subject to the additional limitations that he could only perform routine and repetitive tasks and could not: climb ladders, ropes or scaffolds; perform over the shoulder work; or be subject to concentrated exposure to respiratory irritants including extreme cold, heat, wetness, and

humidity.  R. 225.  The ALJ then found at Step 4 that Boyer could not perform his past work.  The ALJ found at Step 5 that Boyer could perform a significant number of jobs in the national economy.  The ALJ relied on Dr. Lanier's testimony that a person with the described RFC and Boyer's education and work experience could perform several jobs in the national economy.

Boyer appealed to the Appeals Council.  On November 5, 2008, the Appeals Council denied Boyer's request for review.  R. 212.  On that same date, the Appeals Council also acknowledged receipt of additional material from Boyer.  R. 215.  On December 3, 2008, Boyer sent the Appeals Council additional medical evidence.  R. 8-211.  On January 26, 2009, the Appeals Council notified Boyer that the additional medical evidence did not warrant reopening Boyer's claim.  Boyer then filed this action to appeal the denial of Disability Benefits.

## ANALYSIS

This Court reviews the ALJ's Decision to determine whether it is supported by substantial evidence.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate" to support the decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  This Court

must accept the ALJ's findings if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ.  <u>Delgado v. Bowen</u>, 782 F.2d 79, 82 (7th Cir. 1986).  The ALJ further must articulate at least minimally her analysis of all relevant evidence.  <u>Herron v. Shalala</u>, 19 F.3d 329, 333 (7th Cir. 1994).  The Court must be able to "track" the analysis to determine whether the ALJ considered all the important evidence.  <u>Diaz v. Chater</u>, 55 F.3d 300, 308 (7th Cir. 1995).

The ALJ's Decision is supported by substantial evidence.  The ALJ found at Step 3 that Boyer's disabling impairments did not meet any Listing.  In reaching this conclusion, she rejected the opinions of evaluators Hudspeth and Altman that Boyer met the Listing for substance addiction disorders.  Listing 12.09.  This Listing requires physical or behavioral changes associated with regular use of drugs and alcohol.  <u>Id.</u>  The medical evidence supported the ALJ's conclusion that Boyer did not meet this Listing because Dr. Bland repeatedly diagnosed Boyer to be in full remission from alcohol and substance dependency.  He, thus, was not regularly using drugs or alcohol.

The ALJ also rejected the opinions of Boyer's treating physicians, Drs. Bland and Crabtree, that he met the Listings for organic mental disorders,

affective disorders, and asthma. Listings 3.03, 12.02 and 12.04. The Commissioner must give controlling weight to the opinions of treating physicians if those opinions are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527. The Commissioner, however, is not to give controlling weight to a treating physician's opinion on issues reserved to the Commissioner. See Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, SSR 96-5p, 1996 WL 374183 (July 2, 1996). In this case, Drs. Bland's and Crabtree's opinions were not supported by the medical evidence and were inconsistent with substantial evidence in the record.

Dr. Crabtree opined that Boyer met Listing 3.03 for asthma. To meet this Listing, Boyer must have: (1) pulmonary function testing that meets a specified level set forth in the regulations; or (2) asthma attacks six times a year that require physician intervention in spite of prescribed treatment. Listing 3.03. Boyer's pulmonary function test results did not meet the level specified in the regulations, and Boyer did not have asthma attacks six times a year that required physician intervention. Moreover, the evidence

indicated Boyer's attacks did not occur despite prescribed treatment.  Boyer

did not follow prescribed treatment for his asthma because he kept smoking.

The evidence, therefore, supported the ALJ's rejection of Dr. Crabtree's

opinion on this point.

Dr. Bland opined that Boyer met the Listings for organic mental

disorder and affective disorders.  The Listing for organic mental disorder,

12.02, requires medical evidence of a specific organic factor that caused

Boyer's psychological problems.  There is no evidence of any such organic

factor.  All of the evidence indicates that Boyer suffered from depression,

not an organic mental disorder.  The Listing for affective disorders, 12.04,

requires medical evidence of a severe affective disorder, such as depression.

Boyer suffered from depression; however, from April 2007, through

November 2007, Dr. Bland repeatedly stated in his treatment notes that

Boyer's depression was in remission.   These treatment notes provided

substantial evidence that Boyer's condition did not meet Listing 12.04.  The

ALJ's findings that Boyer was not disabled at Step 3 was supported by

substantial evidence.

The ALJ's finding of Boyer's RFC was also supported by substantial

evidence to the extent that the ALJ found that Boyer could perform

sedentary work, subject to the additional limitations that he could only perform routine and repetitive tasks and could not: climb ladders, ropes or scaffolds; perform over the shoulder work; or be subject to concentrated exposure to respiratory irritants including extreme cold, heat, wetness, and humidity.   Dr. Jimenez opined that Boyer had no physical limitations. Boyer testified that he took care of his three year old daughter, washed dishes and did laundry.   He testified that he had trouble standing while doing dishes because of his back, but he did not indicate that he had trouble performing any lifting associated with doing the laundry or caring for his three year old daughter.

Dr. Crabtree opined in May 2006, that Boyer could do less than sedentary work with no lifting, and later in June 2007, opined that Boyer was unable to do any activity.  The ALJ's Decision not to give Dr. Crabtree's opinions controlling weight was supported by substantial evidence.  Dr. Crabtree's opinion that Boyer could not lift was inconsistent with Boyer's testimony that he took care of a three year old and did laundry, and also inconsistent with Dr. Jimenez's opinion.  Dr. Crabtree's opinion that Boyer was unable to do any activity was inconsistent with Dr. Crabtree's earlier opinion that Boyer could sit for six hours per day, walk for two hours per

day, and stand for two hours per day.  The ALJ, thus, could properly elect to reject these opinions.  Dr. Crabtree's remaining opinions were consistent with the ALJ's finding that Boyer could perform sedentary work subject to additional limitations listed by the ALJ.

Dr. Lanier's testimony supported the ALJ's finding that Boyer could perform a significant number of jobs that existed in the national economy. The conclusion that Boyer was not disabled, therefore, was supported by substantial evidence.

Boyer argues that the ALJ erred by not giving the opinions of Drs. Bland and Crabtree controlling weight.  As explained above, those opinions either were not supported by medical evidence or were inconsistent with substantial evidence in the record.   The ALJ, therefore, did not err in deciding not to give those decisions controlling weight.

Boyer argues that the ALJ failed to examine all of the evidence completely and failed to set forth her analysis and findings with sufficient specificity in a number of instances throughout her Decision.  The Court disagrees.  The ALJ must minimally articulate the basis for her Decision. Scheck v. Barnhart, 357 F.3d 697, 700 (7th Cir. 2004).  The ALJ's Decision meets this standard.

Boyer argues that the ALJ erred in weighing the credibility of his testimony. The Court will not review the credibility determinations of the ALJ unless the determinations lack any explanation or support in the record. Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008). Here, there was sufficient evidence to support the credibility determinations. Boyer repeatedly gave inconsistent statements to healthcare providers and evaluators regarding his use of tobacco, alcohol, and drugs. These inconsistencies, alone, support the ALJ's skepticism regarding Boyer's credibility.

THEREFORE, the Commissioner's Motion for Summary Affirmance (d/e 15) is ALLOWED, and Plaintiff Kevin Boyer's Motion for Summary Judgment (d/e 12) is DENIED. The Decision of the Commissioner is affirmed. All pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:   November 24, 2009

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE